2002 ND 193

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Michael Verne JONES, Defendant and Appellant.**

**No. 20020118.**

Supreme Court of North Dakota.

Dec. 4, 2002.

Tracy J. Peters (argued), Assistant State's Attorney, and Brett M. Shasky (appeared), Assistant State's Attorney, Fargo, ND, for plaintiff and appellee.

Monty G. Mertz, Fargo, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Michael Verne Jones appealed from a criminal judgment entered following a jury verdict finding him guilty of possession of methamphetamine, possession of drug paraphernalia, and possession of marijuana. We conclude the trial court did not err in denying Jones's motion to withdraw the waiver of his right to a preliminary hearing, his motion to suppress evidence, or his motion to dismiss the charges due to official misconduct. We affirm.

I.

[¶ 2] On May 31, 2001, Detective Mitch Burris of the Cass County Sheriff's Office was informed by a Ramsey County detective that a reliable confidential informant had information from a third party identifying Mike Jones from Fargo as his source for heroin. The informant gave specific information on drug transactions involving Jones. On June 5, 2001, Detective Burris searched garbage from Jones's residence which had been set out in a receptacle in the alley. In the garbage, Detective Burris found a number of baggies altered in a way consistent with repackaging drugs; powder in a baggie which field tested positive for methamphetamine; an empty bottle of pseudoephedrine; and some notes with information related to guns. Detective Burris also learned from a detective at the Clay County Sheriff's Office that an individual named Wrolstad gave Jones's name as Wrolstad's heroin connection.

[¶ 3] On June 7, 2001, Detective Burris obtained a search warrant to search Jones's residence for drugs. The search warrant was executed on the morning of June 8, 2001. Items discovered during the search included baggies of methamphetamine, marijuana, rolling papers, marijuana cigarettes, marijuana pipes, and syringes. Jones was charged with possession of a controlled substance (methamphetamine), possession of drug paraphernalia, and possession of a controlled substance (marijuana) on October 10, 2001.

[¶ 4] On November 29, 2001, Jones with his court-appointed attorney waived his right to a preliminary hearing and entered pleas of not guilty. A new attorney was appointed on December 5, 2001, after a potential conflict of interest was discovered by the first attorney. On April 9, 2002, the trial court denied Jones's motions to withdraw his waiver of a preliminary hearing, to suppress all evidence, and

to dismiss the charges. A jury trial was held on May 7 and 8, 2002. Jones was found guilty of all charges by the jury, and a criminal judgment was entered on May 9, 2002. Jones appeals from the criminal judgment.

## II.

[¶ 5]   Jones argues the trial court improperly denied his motion to withdraw his waiver of his right to a preliminary hearing. Jones concedes he was fully advised of his right to a preliminary hearing, but contends his waiver was not knowing and voluntary because his attorney did not explain his rights to him or go over the facts and circumstances of his case.

■   [¶ 6]   Under   Rule   5(c)(1), N.D.R.Crim.P., a defendant charged with a felony has a right to a preliminary hearing and, if assisted by counsel, can waive this right. "We will not reverse a trial court's decision to grant a counsel-assisted waiver absent evidence on the record which demonstrates there was no valid reason to waive the preliminary hearing." *State v. Eldred*, 1997 ND 112, ¶ 4, 564 N.W.2d 283. Because Jones is arguing he was not fully advised of his rights by his attorney, Jones is essentially asserting a claim of ineffective assistance of counsel. In order to prevail on an ineffective assistance of counsel claim, Jones must establish two elements: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Burke*, 2000 ND 25, ¶ 36, 606 N.W.2d 108; *DeCoteau v. State*, 1998 ND 199, ¶ 6, 586 N.W.2d 156.

■   [¶ 7]   Jones did not file a transcript of the November 29, 2001, hearing in which he waived his right to a preliminary hearing. Thus, Jones "assumes the consequences and the risk for the failure to file a complete transcript." *City of Fargo v. Erickson*, 1999 ND 145, ¶ 16, 598 N.W.2d 787. The transcript from the April 3, 2002, motion hearing, however, indicates Jones was represented by counsel when he waived his right to a preliminary hearing; the court explained his rights to him; and Jones waived his right through counsel. These elements are sufficient to establish Jones knowingly and voluntarily waived his right to a preliminary hearing. *See Eldred*, at ¶¶ 5–6. Further, Jones has failed to establish there was no valid reason to waive the preliminary hearing, or that his court-appointed counsel performed deficiently. Thus, we cannot conclude the trial court abused its discretion in refusing to permit Jones to withdraw his waiver. We affirm the trial court's denial of Jones's motion to withdraw his waiver.

## III.

■   [¶ 8]   Jones argues the trial court erred in denying his suppression motion because the evidence presented to obtain the search warrant and to support the garbage search included false statements from an unreliable source.

[¶ 9]   Detective Burris's affidavit described his nearly 13 years of work and training as a law enforcement officer and narcotics investigator, and provided:

> On May 31, 2001, your affiant received a phone call from Detective Steve Hammre of Ramsey County Sheriff's Department. Hammre has seventeen years of law enforcement experience with seven of those years as a narcotics investigator. Hammre has an informant who has worked for Ramsey County and is considered reliable. This informant who will be referred to as a reliable confidential informant (RCI) is also known to Detective Burris. Burris has

worked two cases with Hammre and Hammre's RCI. On May 31, 2001, Burris spoke with Hammre. Hammre told Burris that the RCI had information on an individual in Fargo. The RCI identified Mike Jones as an individual who travels to Ramsey County and delivers heroin. The RCI heard about the deliveries through a third person. The said third person sold the RCI some of the heroin. Dur[in]g this drug transaction the third person told the RCI that the heroin came from a Mike Jones of Fargo. There were two separate drug transactions that took place between Mike Jones and the third party. The first transaction the RCI was aware of occurred on May 23, 2001. The second drug transaction occurred on May 26 and 27, 2001. The third person identified to the RCI the third person's source for both deliveries to be Mike Jones of Fargo. The RCI described Jones as a male, approximately 50 years of age, 5' 10", 170 lbs, with brown hair and brown eyes. The RCI further indicated that Jones likes to use methamphetamine and shoots up with needles. The RCI stated Jones really likes guns. The RCI learned of an incident that happened in Seattle, WA, wherein Jones brought two guns on a road trip to Seattle where Jones purchased drugs and transported the drugs back to ND. Jones was armed and brought the two guns into the house in Seattle during the purchase of narcotics, according to the third person.

In checking Cass County records, Burris located a Michael Verne Jones date of birth May 21, 1946. The address listed for Jones is 1042 4th Street North, Fargo, Cass County, North Dakota. Burris also did a criminal history check, finding one prior conviction for petty larceny in 1971. Burris did locate a criminal complaint against Michal [sic] Verne Jones for a misdemeanor marijuana charge. According to the Cass County State's Attorney's Office, the complaint was dismissed because of medical problems of a potential witness.

On June 5th, 2001, Detective Burris and Special Agent Derek Hill did a garbage search at 1042 4th Street North, the residence of Michale [sic] Verne Jones. Burris and Hill found indicia of Michael and [Mrs.] Jones at 1042 4th Street North Fargo. Burris and Hill also found baggies, seven corners of baggies, three knotted baggies, and four small ziplock baggies. Burris has training and experience with this type of baggies. Based on this training and experience, it is Burris' opinion that these baggies, in their current stage, torn corners, knotted, and small ziplock are utilized for the transportation, concealment, sale, and repackaging from larger quantities to smaller quantities of drugs. In one of the baggies there was enough powder left in the baggie for a field test. Hill tested the powder and the powder tested positive for methamphetamine. Also located in the garbage was an empty bottle of pseudoephedrine 30 mg and 100 tablets. Burris recognizes pseudoephedrine as a main ingredient in the manufacturing of methamphetamine, however, no other ingredients needed to manufacture methamphetamine were found in the garbage.

There was an American Gunsmithing Association membership located in the garbage. On the envelope of the membership were secrets on how to pop the slide off a colt 1911–type pistol in one quick move. There were many more gunsmith's secrets advertised inside the membership papers. Burris also located a handwritten note, the note had six items listed. It started with Valley Gun.

    1. .357 glaser safety slugs

2. Corbon high penetration other high penetration

3. 2 magazines for high power

4. .22's for H & R

5. Sears, Menards, GateCity, and RNANB

6. Call about Seattle. (The RCI through the third person indicated Jones's source was in Seattle)

Get grips on H & R (End of note)

The RCI through the third person indicated that Jones' source is in Seattle, WA. Burris checked Cass County records for concealed weapons permits and learned that Michael Verne Jones has a concealed weapons permit. The permit expired March 13, 2001, however, Jones has ninety days to renew the permit. On June 7, 2001, Burris spoke with Charles Anderson who is employed by Clay County Sheriff's Office. Anderson told Burris that Anderson de-briefed [] Wrolstad. Wrolstad told Anderson that Wrolstad's black tar heroin source is Mike Jones. Wrolstad told Anderson that Jones sells and uses methamphetamine and heoroin [sic]. Wrolstad indicated that Jones lives on 4th Street between 10th and 11th Avenue.

[¶ 10] Challenges to the issuance of a search warrant, based on an allegation law enforcement made a false statement in the support affidavit, are governed by the standard set forth by the United States Supreme Court in *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Under *Franks*, if the defendant makes a substantial preliminary showing to justify an evidentiary hearing, the defendant has the burden at the hearing to prove by a preponderance of the evidence that the false statements in the warrant affidavit were made "knowingly and intentionally, or with reckless disregard for the truth." *Franks*, at 155, 98 S.Ct. 2674; *State v. Rangeloff*, 1998 ND 135, ¶ 9, 580 N.W.2d 593. "A false affidavit statement under *Franks* is one that misleads the neutral and detached magistrate into believing the stated facts exist, and those facts in turn affect the magistrate's evaluation of whether or not there is probable cause." *Rangeloff*, at ¶ 9.

[¶ 11] Whether a defendant establishes recklessness or intentional falsity is a finding of fact. *State v. Tester*, 1999 ND 60, ¶ 11, 592 N.W.2d 515. We review a trial court's ruling on whether the defendant demonstrates statements in a warrant affidavit were made intentionally or with reckless disregard for the truth under the clearly erroneous standard. *State v. Schmitt*, 2001 ND 57, ¶ 11, 623 N.W.2d 409; *State v. Damron*, 1998 ND 71, ¶ 10, 575 N.W.2d 912; *State v. Padgett*, 393 N.W.2d 754, 757 (N.D.1986). A finding of fact is clearly erroneous when it is induced by an erroneous view of the law, when there is no evidence to support it, or when, although there is some evidence, on the entire evidence, the Court is left with a definite and firm conviction a mistake has been made. *Schmitt*, at ¶ 12.

[¶ 12] In this case, Jones contends the false information in the affidavit to support the search warrant are the statements given to law enforcement from Wrolstad. Detective Burris included the following details from Wrolstad in his supporting affidavit: Mike Jones is Wrolstad's black tar heroin source, Jones sells and uses methamphetamine and heroin, and Jones lives on 4th Street between 10th and 11th Avenue. To demonstrate the information was false, Jones offered affidavits written by himself and a friend. We cannot conclude these affidavits establish the statements Detective Burris provided in his affidavit to support the search warrant were false. We conclude Jones has failed

to prove by a preponderance of the evidence the detective intentionally or recklessly provided false information to the magistrate to support the issuance of the search warrant. Thus, we do not have a definite and firm conviction a mistake has been made.

[¶ 13] Jones also contends the trial court erred in denying his motion to suppress evidence because there is no substantial basis that probable cause existed to issue a search warrant. "A trial court's decision to deny a motion to suppress will not be reversed if there is sufficient competent evidence capable of supporting the trial court's findings, and if its decision is not contrary to the manifest weight of the evidence." *State v. Laib*, 2002 ND 95, ¶ 8, 644 N.W.2d 878.

[¶ 14] Whether there is probable cause to issue a search warrant is a question of law. *Schmitt*, at ¶ 18. In *Damron*, at ¶¶ 6–7, we outlined the requirements for probable cause:

> "Probable cause to search does not require the same standard of proof necessary to establish guilt at a trial; rather, probable cause to search exists if it is established that certain identifiable objects are probably connected with criminal activity and are probably to be found at the present time at an identifiable place." All the information presented to establish probable cause should be taken together, not analyzed in a piecemeal fashion. The magistrate is to make a practical, commonsense decision on whether probable cause exists to search that particular place. We generally defer to a magistrate's determination of probable cause, and will not disturb a magistrate's conclusion that probable cause exists if there is a substantial basis for the conclusion. When reviewing a magistrate's determination of probable cause, a doubtful or marginal

case should be resolved in favor of the magistrate's determination.

We apply the totality-of-the-circumstances test to review whether information before the magistrate was sufficient to find probable cause, independent of the trial court's findings. More than "bare-bones" information must be presented to the magistrate in order to establish probable cause.

> "Although each bit of information ..., by itself, may not be enough to establish probable cause and some of the information may have an innocent explanation, 'probable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observed as trained officers ... which is not weighed in individual layers but in the "laminated" total.'"

(citations omitted).

[¶ 15] Detective Burris' affidavit in support of the search warrant included, in addition to the statements provided by Wrolstad, information from a reliable confidential informant and a list of items suggesting drug possession found in Jones's garbage. Jones argues the search of his garbage was impermissible and should not be a basis to support probable cause to issue a search warrant for Jones's residence.

[¶ 16] Warrantless searches of garbage set out for disposal are constitutionally valid under the Fourth Amendment to the Constitution. *California v. Greenwood*, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988). "Under the North Dakota Constitution, [Jones] must have a 'subjective expectation of privacy in [his] garbage that society accepts as objectively reasonable' for his garbage to be protected." *State v. Herrick*, 1997 ND 155, ¶ 9, 567 N.W.2d 336. This Court has allowed

warrantless searches of garbage when the garbage is located where there is no reasonable expectation of privacy. *See State v. Carriere,* 545 N.W.2d 773, 775–76 (N.D. 1996) (determining no reasonable expectation of privacy in garbage when the owner of the garbage placed the garbage on his property at the end of the driveway in a container with a strap holding the cover in place); *State v. Rydberg,* 519 N.W.2d 306, 310 (N.D.1994) (concluding owner of garbage had no reasonable expectation of privacy due to the public location of the garbage and the placement of the garbage cans on the edge of a public alley behind the house); *State v. Ronngren,* 361 N.W.2d 224, 228 (N.D.1985) (concluding defendant had no reasonable expectation of privacy in garbage after a dog carried the garbage onto a neighbor's property). In this case, Jones set out his garbage in a receptacle in an alley. Jones retained no reasonable expectation of privacy in the garbage clearly set out for disposal. Thus, Jones's garbage was lawfully searched and the evidence lawfully seized.

[¶ 17] The evidence found in Jones's garbage included a number of baggies altered in a way consistent with repackaging drugs, powder which field tested positive for methamphetamine, and an empty bottle of pseudoephedrine, an ingredient in manufacturing methamphetamine. Where drug residue is discovered in the garbage, "it is well established that affidavits based almost entirely on the evidence garnered from garbage may be sufficient to support a finding of probable cause." *United States v. Sumpter,* 669 F.2d 1215, 1221 (8th Cir.1982). We have held probable cause to issue a search warrant existed in cases where probable cause was primarily established from drug residue in the garbage. *See State v. Duchene,* 2001 ND 66, ¶¶ 15–17, 624 N.W.2d 668 (probable cause to issue a search warrant is sup-

ported by marijuana seed and marijuana stems found in the garbage along with prior drug convictions); *State v. Johnson,* 531 N.W.2d 275, 278 (N.D.1995) (presence of marijuana seeds in the garbage provided substantial basis to support magistrate's finding of probable cause); *State v. Erickson,* 496 N.W.2d 555, 559 (N.D.1993) (marijuana and plastic bags combined with citation and envelope with Erickson's name in the garbage support a determination of probable cause). We conclude the information presented to the magistrate, including the items discovered in Jones's garbage, the statements from the reliable confidential informant, and the information from Wrolstad, would warrant a person of reasonable caution to believe the contraband or evidence sought would probably be found in Jones's home. Because the magistrate had a substantial basis to determine there was probable cause to search Jones's residence, we affirm the trial court's order denying Jones's motion to suppress evidence.

## IV.

[¶ 18] Jones contends the trial court erred by not dismissing the charges due to official misconduct. Jones maintains official misconduct resulted when the State used unreliable and false information to attain the search warrant, the charges against Jones were dismissed and refiled, Jones's wife was subpoenaed to testify, and firearm forfeiture was requested without the commencement of formal proceedings. Jones argues these acts by the State, taken together, constitute official misconduct and require dismissal of the case.

[¶ 19] We have outlined our standard of review for preliminary proceedings, such as a motion to dismiss, in criminal cases at the trial court level. "We will not reverse a trial court's findings of fact

in preliminary criminal proceedings if, after the conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the findings and if the trial court's decision is not contrary to the manifest weight of the evidence." *State v. Berger,* 2001 ND 44, ¶ 11, 623 N.W.2d 25.

[¶ 20] We have already determined Jones failed to prove the search warrant was obtained with false information, thus we cannot conclude the prosecutor committed official misconduct in obtaining the search warrant. N.D.R.Crim.P. 17 permits an "attorney for a party to any proceeding" to issue a subpoena for the attendance of witnesses. The only objection to the subpoena asserted by Jones is that "[t]he State knew exactly what she would say, because she had been fully debriefed before the trial." We conclude there was no official misconduct committed by the State when it issued a subpoena to Jones's wife.

[¶ 21] "The double jeopardy clause, found in the Fifth Amendment of the U[nited] S[tates] Constitution, protects against successive prosecutions and punishments for the same criminal offense." *State v. Foley,* 2000 ND 91, ¶ 6, 610 N.W.2d 49. Rule 48(a), N.D.R.Crim.P., permits, upon motion and supporting written statements detailing the reasons for the motion, a prosecuting attorney with the court's approval to dismiss a charge against an individual prior to trial. The explanatory notes following the rule state the rule is "designed to prevent harassment of a defendant by charging, dismissing and recharging without placing a defendant in jeopardy."

[¶ 22] In this case, the State dismissed the charges because a detective, who the State considered an essential witness, was unavailable to testify at trial after being placed on active military duty as a result of the events of September 11, 2001. The State requested a continuance, but the trial court denied the State's request. Thus, the charges were dismissed without prejudice with the consent of the court prior to trial.

[¶ 23] Jones argues the witness was not essential because he was not called to testify at either the motion hearing or at trial. Because Jones stipulated to issues concerning foundation, chain of custody, and laboratory analysis which had not been agreed to prior to the dismissal, we cannot conclude the witness was not essential at the time of the dismissal and conclude the State had an appropriate reason to request dismissal. A dismissal without prejudice permits Jones to be recharged. *State v. O'Boyle,* 356 N.W.2d 122, 124 (N.D.1984). In this case, we conclude the mere act of dismissing and recharging the defendant does not constitute official misconduct.

[¶ 24] Jones also argues the prosecutor committed official misconduct when she requested Jones's firearms be forfeited as a condition of probation, without the commencement of civil forfeiture proceedings. The trial court did not order Jones's firearms be forfeited. Although we recently held the State should proceed under N.D.C.C. § 29–31.1–04, the civil forfeiture statutes, if it desires permanent forfeiture of Jones's firearms, *State v. Faleide,* 2002 ND 152, ¶ 8, 652 N.W.2d 312, we cannot conclude the prosecutor, by requesting forfeiture as a condition of probation, committed official misconduct which would support dismissal of the charges.

[¶ 25] We conclude the motion to dismiss based on official misconduct is not supported by any evidence, and it was appropriately denied by the trial court.

## V.

[¶ 26] We affirm the judgment of the trial court in denying Jones's motion to withdraw the waiver of his right to a preliminary hearing, his motion to suppress evidence, and his motion to dismiss the charges due to official misconduct.

[¶ 27] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, WILLIAM A. NEUMANN, and DALE V. SANDSTROM, JJ., concur.